[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15415
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00074-MP-GRJ


WARREN LEWIS,

                                        Plaintiff - Appellant,

                    versus

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant - Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 16, 2012)

Before BARKETT, WILSON, and PRYOR, Circuit Judges.

PER CURIAM:

Warren Lewis appeals the district court's order affirming the Commissioner of Social Security's ("Commissioner") denial of his application for a period of disability and disability insurance benefits, 42 U.S.C. § 405(g). Lewis contends that the Administrative Law Judge ("ALJ") failed to follow the directives of Social Security Ruling ("SSR") 02-1p governing obesity. He argues that his obesity and arthritis combined should equate to a listing-level of impairment, although he does not specify which listing.

We review the decision of the ALJ as the Commissioner's final decision when the ALJ has denied benefits and the Appeals Court has denied review of the ALJ's determination. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We give deference to the Commissioner's factual findings, asking only if they are supported by substantial evidence "consisting of such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We review *de novo* the Commissioner's legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

A claimant bears the burden of showing he is disabled, *see* 20 C.F.R. § 404.1512(a), and the ALJ makes a five-step evaluation, applying the criteria of 20 C.F.R. § 404.1520, to determine whether the claimant has met that burden,

*Doughty*, 245 F.3d at 1278.

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id.* (citations omitted). At the fourth and fifth steps, the ALJ makes a determination of the claimant's residual functional capacity ("RFC") by examining his ability to sit, stand, walk, lift, carry, push, pull, reach, stoop, crouch, handle, and perform other work-related physical demands. *See* 20 C.F.R. §§ 404.1520(e), (f), 404.1545(b).

As Lewis acknowledges in his brief, obesity is not a listed impairment, but the ALJ is required to consider obesity in the analysis of a claimant's overall medical condition. *See* SSR 02-1p. Social Security Regulation 02-1p provides that obesity shall be considered when determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment bars

3

claimant "from doing past relevant work and other work that exists in significant numbers in the national economy."  SSR 02-1p.  The Regulation also states that:

> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. . . .
>
> We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .
>
> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.

SSR 02-1p.

We find that the ALJ properly considered Lewis's obesity in accordance with SSR 02-1p when making a disability determination.  The ALJ heard testimony from treating doctors and reviewed evidence from a number of sources regarding Lewis's obesity, considering his obesity in the context of his other health problems.  Ultimately, the ALJ concluded that Lewis's morbid obesity *was* a severe impairment but that it was not one that

4

rose to the level of a listed impairment, even in conjunction with other impairments. The ALJ also found that despite his obesity, Lewis had the RFC to (1) lift twenty pounds occasionally and ten pounds frequently, (2) stand, walk, or sit for about six out of eight hours in a workday, and (3) perform light work as defined by 20 C.F.R. § 416.967(b). He concluded that although Lewis could not perform his past relevant work, there are jobs that exist in significant numbers in the national economy that Lewis would be able to perform. Therefore, the ALJ concluded that Lewis is not disabled.

The ALJ's determinations are all supported by substantial evidence in the record. Dr. Chodosh examined Lewis in 2006 and assessed that Lewis "d[id] not appear particularly unhealthy." He stated that despite some health problems, Lewis was able to be independent in activities of daily living and could walk, stand, sit, stoop, lift light objects, and use his hands normally. Dr. Chodosh also found that Lewis had full strength and motor function in his limbs, despite some swelling in his legs, and that the reduction in Lewis's range of motion was minor. In 2006, Lewis underwent a thoracotomy, but one month after the procedure, he checked in with Doctor Proia and stated that "he fe[lt] quite good." In 2007, Dr. Pack

5

treated Lewis for foot pain and recorded that Lewis had "[n]o perceived weakness" and "no problems with ambulation." Lewis also visited an imaging center in 2007 for investigation of hip, shoulder, and back pain, and the report indicated only "mild to moderate degenerative changes of both hips," with no indication of harm in other regions. At his hearing with the ALJ, Lewis testified about his symptoms and the restrictions that his health placed on the ability to engage in daily activities. A vocational expert was then called to testify to the availability of work that a hypothetical candidate with Lewis's characteristics could perform, and he responded that such positions existed in significant numbers in the regional and national economy.

The record indicates that although Lewis had health problems, these problems did not amount to a listing-level impairment. To the extent that Lewis argues that he had arthritis that would meet the requirements of Musculoskeletal System impairment, 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00, one criteria for that type of impairment is that a person have the "inability to ambulate effectively on a sustained basis," *id.* Because the record indicates that Lewis was capable of ambulating, he would not fall within that listed impairment.

6

We therefore affirm because the ALJ's findings are legally correct and supported by substantial evidence.

**AFFIRMED.**